UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| B. JOE ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:23-CV-10548-AK |
| v. | ) | |
| | ) | |
| ENVIRONMENTAL PROTECTION AGENCY; MICHAEL S. REGAN, in his official capacity as Administrator of the EPA, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS**

**A. KELLEY, D.J.**

Plaintiff Joe Robinson ("Robinson") brings this action against the U.S. Environmental Protection Agency ("EPA") and its administrator, Michael Regan, alleging that Defendants deceived German automaker Volkswagen ("VW"), colluded with VW's defense counsel in two federal cases, violated a 1977 court order, and improperly classified sulfur dioxide as a pollutant. Defendants have filed a Motion to Dismiss [Dkt. 9], which Plaintiff opposes. [Dkt. 10]. Because Plaintiff has failed to establish that he has standing to bring this action, Defendants' Motion [Dkt. 9] is **GRANTED**. Plaintiff's Motion for Summary Judgment [Dkt. 14] is consequently **DENIED** as moot.

**I.   BACKGROUND**

The following facts are from the Complaint unless otherwise noted. [See Dkt. 1 ("Complaint")]. Plaintiff brings this purported class action suit pro se, as a concerned citizen who has expertise related to nitrogen oxides ("$NO_X$") emissions, evidenced by his holding a

1

patent for a technique "to reduce nitrogen oxides and carbon particles simultaneously from diesel combustion." [Dkt. 1 at 2].

Regulation 40 C.F.R § 86.1811-04 ("the emissions standards") sets out the emissions standards for light-duty vehicles, light-duty trucks, and medium-duty passenger vehicles. Robinson asserts 40 C.F.R §86.1811-04 clearly states that the Federal Test Procedure ("FTP"), a series of tests designed to measure tailpipe emissions and fuel economy of most passenger cars, is "the only test that can determine whether a vehicle is in compliance . . . with the regulation." [Id. at 3].

Operating under the belief that its diesel vehicles would not meet the emissions standards for $NO_X$ without additional intervention, VW designed and installed on its vehicles a purported pollution control system that allegedly reduced $NO_X$ emissions using a chemical fluid called AdBlue. [Id. at 2]. To meet the EPA's regulatory emissions requirements, the VW vehicles' computer software would detect when it was being tested on the EPA's FTP for $NO_X$ emissions and would then dispense the AdBlue mixture. [Id.]. However, AdBlue was not an effective $NO_X$ control system. [Id. at 3]. Furthermore, VW's vehicles would have met EPA's $NO_X$ standards without the use of AdBlue, as the EPA itself determined through its testing of VW cars between 2010 and 2014. [Id.].

The EPA nevertheless allegedly had the West Virginia Institute[1] test VW vehicles under conditions different from those used when the EPA administers the FTP. [Id. at 4-5]. According

---

[1] As far as the Court was able to ascertain, a West Virginia Institute does not exist. Rather, it appears that the Plaintiff is referring to a research team at West Virginia University's Center for Alternative Fuels Engines and Emissions ("CAFEE"). See Second Am. Compl. ¶ 226-28, In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prod. Liab. Litig., No. 15-MD-02672-CRB, 2023 WL 2600450 (N.D. Cal. Mar. 22, 2023) (stating that CAFEE conducted a study in which they discovered VW diesel vehicles did not comply with U.S. and California emissions standards).

to Robinson, the data produced by the West Virginia Institute incorrectly indicated VW vehicles were out of compliance with $NO_X$ emissions standards.  [Id.].

When Plaintiff requested the Department of Justice email him a copy of the EPA's FTP data showing VW diesel vehicles were out of compliance, an attorney in the Environmental Crimes Section replied that the information he sought was not publicly available.  [Id. at 5]. Robinson concludes that if the information is not publicly available, there is no evidence of a VW being out of compliance or of AdBlue being a pollution control system; therefore, there is no evidence of tampering.  [Id.].

The EPA thereafter deceived VW and presented the West Virginia Institute research findings to two federal courts, the Northern District of California and the Eastern District of Michigan.  [Id. at 5].  VW was ultimately found guilty of cheating on the emissions tests by these courts.  [Id.].

In both cases, Sullivan & Cromwell LLP ("S&C") served as defense counsel to VW.  [Id. at 6].  S&C declined Plaintiff's offer of expert services to defend VW or to argue there was no evidence of VW committing any crime.  [Id. at 6-7].  Robinson alleges this meant that S&C chose to collude with the EPA to "convince VW to confess to a crime that had never been committed." [Id.].  Thus, Robinson states, the EPA violated a court order from the 1977 case Lubrizol Corp. v. EPA, 562 F.2d 807 (D.C. Cir. 1977), in which the court ordered that in all of the EPA's litigation or any request for adjudication, "the evidence must be consistent with the wording of the law or, as in this case, with the wording of the regulation."  [Id.].

Lastly, Robinson states the EPA falsely claims that sulfur dioxide ("$SO_2$") is a pollutant. [Id. at 11].  Classifying $SO_2$ as a pollutant means that oil refineries must limit the sulfur content

3

in diesel fuel, enormously raising the cost of diesel fuel, and in turn raising the cost of every product Americans buy.  [Id. at 11-12].

The Complaint is difficult to follow, but the Court has identified four claims in which Robinson alleges that the EPA (1) deceived VW and two federal courts by presenting the West Virginia Institute's false data as legitimate evidence of VW's malfeasance [Id. at 5]; (2) colluded with S&C to convince VW to confess to a crime that it never committed [Id. at 7]; (3) violated the Luprizol court order, and thus committed contempt of court [Id.]; and (4) has caused the cost of diesel fuel to rise by falsely claiming that $SO_2$ is a pollutant.  [Id. at 11].  Plaintiff accordingly requests the following relief: (1) removal of the EPA's authority to regulate the emissions of four-wheel diesel vehicles [Id. at 10]; (2) the Court order the EPA to remove $SO_2$ from its list of regulated pollutants and relatedly that the Court remove the EPA's right to "limit the sulfur content in diesel fuel and home heating fuel" [Id. at 12]; and (3) the Court order the EPA's regulations to require that coal become the fuel of choice in the generation of electricity instead of natural gas.  [Id. at 10, 12].

## II.     LEGAL STANDARD

Federal courts are of limited jurisdiction, and on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1), the Court must ensure it has the constitutional and statutory authority to adjudicate.  Kokkonen v. Guardian Life Ins. Co. of Am., 511 U.S. 375, 377-78 (1994).  "The existence of subject-matter jurisdiction 'is never presumed,'" Fafel v. Dipaola, 399 F.3d 403, 410 (1st Cir. 2005) (quoting Viqueira v. First Bank, 140 F.3d 12, 16 (1st Cir. 1998)), and federal courts "have a duty to ensure that they are not called upon to adjudicate cases which in fact fall outside the jurisdiction conferred by Congress."  Esquilín-Mendoza v. Don King Prods., Inc., 638 F.3d 1, 3 (1st Cir. 2011).

4

Review for dismissal for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1) is "similar to that accorded a dismissal for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6)." Murphy v. United States, 45 F.3d 520, 522 (1st Cir. 1995). That is, when "a district court considers a Rule 12(b)(1) motion, it must credit the plaintiff's well-pled factual allegations and draw all reasonable inferences in the plaintiff's favor." Merlonghi v. United States, 620 F.3d 50, 54 (1st Cir. 2010). The party asserting federal jurisdiction is responsible for establishing that such jurisdiction exists, Kokkonen, 511 U.S. at 377; see also Spielman v. Genzyme Corp., 251 F.3d 1, 4 (1st Cir. 2001), and a "plaintiff cannot rest a jurisdictional basis merely on unsupported conclusions or interpretations of law." Johansen v. United States, 506 F.3d 65, 68 (1st Cir. 2007) (internal quotation marks and citation omitted).

Thus, the Court's subject matter jurisdiction "must be apparent from the face of the plaintiffs' pleading." Viqueira, 140 F.3d at 16. The Court "must resolve questions pertaining to its subject-matter jurisdiction before it may address the merits of a case." Donahue v. Boston, 304 F.3d 110, 117 (1st Cir. 2002) (citation omitted).

Additionally, while the Court is "required to construe liberally a pro se complaint," Plaintiff's "pro se status does not insulate [him] from complying with procedural and substantive law," including the Federal Rules of Civil Procedure and the Local Rules of this Court, "and dismissal remains appropriate when the court lacks jurisdiction over the claims or the parties and when the complaint fails to even suggest an actionable claim." Ahmed v. Rosenblatt, 118 F.3d 886, 890 (1st Cir. 1997); Overton v. Torruella, 183 F. Supp. 2d 295, 303 (D. Mass. 2001). To be sure, "the [pleading] requirements of Rule 8(a)(2) are minimal—but 'minimal requirements are not tantamount to nonexistent requirements.'" Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 68 (1st Cir. 2004) (quoting Gooley v. Mobil Oil Corp., 851 F.2d 513,

5

514 (1st Cir. 1988)).  Even a pro se plaintiff must "provide sufficient notice to the defendant[] of his claims," and the "failure to identify a particular legal theory . . . places an unfair burden on the defendant to speculate on the potential claims that [the] plaintiff may be raising against it and the defenses it might assert in response to each of these possible causes of action."  Higgins v. Melrose, No. 18-CV-12605-PBS, 2019 WL 2870735, at *3 (D. Mass. July 2, 2019).

**III.   DISCUSSION**

Standing is a "prerequisite to a federal court's subject matter jurisdiction," Hochendoner v. Genzyme Corp., 823 F.3d 724, 730 (1st Cir. 2016), and "therefore must be resolved before a court may reach the merits," Cowels v. Fed. Bureau of Investigation, 327 F. Supp. 3d 242, 248 (D. Mass. 2018).  The Constitution limits the jurisdiction of federal courts to actual cases or controversies.  U.S. Const. art. III, § 2, cl. 1.  Here, for a "case or controversy" to exist, the plaintiffs must be able to demonstrate a "personal stake in the outcome of the controversy."  Katz v. Pershing, LLC, 672 F.3d 64, 71 (1st Cir. 2012) (quoting Baker v. Carr, 369 U.S. 186, 204 (1962)).  This limitation helps "prevent the judicial process from being used to usurp the powers of political branches" and "confines the federal courts to a properly judicial role."  Spokeo, Inc. v. Robins, 578 U.S. 330, 338 (2016) (citations omitted).  "Because standing is fundamental to the ability to maintain a suit . . . where standing is at issue, heightened specificity is obligatory at the pleading stage."  United States v. AVX Corp., 962 F.2d 108, 115 (1st Cir. 1992).  To establish standing in a case, a plaintiff must prove three elements: first, that the plaintiff suffered an injury in fact; second, a causal connection between that injury and the defendant's conduct; and third, that the injury at issue can in fact be remedied by the court.  Katz, 672 F.3d at 71 (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 560-61 (1992)).

To allege an injury in fact, a plaintiff must show they have suffered an "invasion of a legally protected interest" that was "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Spokeo, 578 U.S. at 339 (quoting Lujan, 504 U.S. at 560). Particularity requires plaintiffs to demonstrate that they have personally suffered some harm, and the "actual or imminent" requirement "ensures that the harm has either happened or is sufficiently threatening." Katz, 672 F.3d at 71. "[I]t is not enough that the harm might occur at some future time," and a "generalized grievance" is not enough. Id. at 71-72.

A generalized interest in the outcome of litigation is insufficient to invoke Article III standing, which "is not to be placed in the hands of concerned bystanders, who will use it simply as a vehicle for the vindication of value interests." Hollingsworth v. Perry, 570 U.S. 693, 707 (2013) (internal quotation marks and citation omitted). Rather, "the party who invokes the [judicial] power must be able to show . . . that he has sustained or is immediately in danger of sustaining some direct injury . . . and not merely that he suffers in some indefinite way in common with people generally." Id. at 706 (internal quotation marks omitted). "A mere interest in an event—no matter how passionate or sincere the interest and no matter how charged with public import the event—will not substitute for an actual injury." AVX Corp., 962 F.2d at 114. Moreover, taxpayer status alone generally does not confer standing to challenge the actions or inactions of the federal government. Hein v. Freedom from Religion Found., Inc., 551 U.S. 587, 593 (2007). If it did, "the federal courts would cease to function as courts of law and would be cast in the role of general complaint bureaus." Id.

As to the second element, traceability, all plaintiffs must show "a sufficiently direct causal connection between the challenged action" of the defendant "and the identified harm." Dantzler, Inc. v. Empresas Berríos Inventory & Operations, Inc., 958 F.3d 38, 47 (1st Cir. 2020)

(citations omitted). This connection cannot be "overly attenuated" and cannot stem from the independent action of a third party. Id. "Although an indirect causal relationship is not prima facie fatal, an injury is less likely to satisfy this requirement where the causal chain between the defendant's action and the alleged harm depends on actions of a third party." Delaney v. Baker, 511 F. Supp. 3d 55, 68 (D. Mass. 2021).

The final standing hurdle, redressability, requires the Court to "consider the relationship between 'the judicial relief requested' and the 'injury' suffered." Efreom v. McKee, 46 F. 4th 9, 21 (1st Cir. 2022) (citing California v. Texas, 141 S. Ct. 2104, 2115 (2021)).

As the Court will discuss below, Robinson fails to demonstrate standing in order for this Court to exercise subject-matter jurisdiction over this dispute. The Court will address each of Robinson's claims in turn, but all fail to clear the first hurdle—injury in fact—of the three-part Lujan test. For this reason, the Court need not discuss the issues of traceability or redressability.

**A. The Defrauding of Volkswagen Claim**

A major thrust of Robinson's overall complaint is that VW was the victim of the EPA's alleged malfeasance. Specifically, Robinson alleges that the EPA presented misleading emissions testing data to VW and the federal courts before which VW was being tried. This caused VW to plead guilty and be convicted of circumventing the FTP and violating emissions regulations. [Dkt. 1 at 4-5]. As previously mentioned, an injury in fact must be both concrete and particularized. However, Robinson does not allege a particularized injury as a result of Defendants' conduct. "For an injury to be 'particularized,' it 'must affect the plaintiff in a personal and individual way.'" Spokeo, 578 U.S. at 339 (quoting Lujan, 504 U.S. at 560 n.1). There is no connection between the EPA's alleged deceit of VW and Robinson. In fact, Plaintiff has no connection to VW or the two civil and criminal actions against VW.

As the government aptly points out, "Plaintiff does not have standing to collaterally challenge [the] EPA's conduct in resolving separate enforcement cases" against VW. [Dkt. 10 at 10]. It is well established that uninvolved third parties are unable to bring a suit on behalf of an injured party, save for rare exceptions—none of which apply to the instant set of facts. See e.g., Kowalski v. Tesmer, 543 U.S. 125, 129-30 (2004) (holding that generally, to qualify for an exception to the personal injury requirement, a party must demonstrate both a close relationship to the injured party and that the injured party faces some obstacle preventing them from suing on their own behalf). Robinson's claims that the EPA deliberately deceived VW and two federal courts clearly do not satisfy the first prong of the Lujan test and must therefore be dismissed.

### B. Contempt of Court Claim

Similar to Robinson's claims concerning the EPA's deceit of VW, his conclusory claims regarding the EPA's alleged contempt of the Lubrizol court order fail to demonstrate a concrete and particularized injury. Robinson lacks any connection to Lubrizol, the Volkswagen cases in California and Michigan, or the parties involved. Again, Robinson takes on the role of a concerned bystander; a role that does not afford him standing to bring this claim against Defendants. Because a generalized interest in the outcome of litigation is insufficient to invoke Article III standing, Robinson's claims about the EPA's contempt of court must also fail.

### C. Misclassification of Sulfur Dioxide Claim

Robinson lastly alleges that the EPA wrongly classifies $SO_2$ as a pollutant, raising the cost of diesel fuel, "which in turn has raised the cost of every product we buy." [Dkt. 1 at 11]. For the same reasons the Court gave regarding Robinson's other allegations, his complaint once again fails to establish that he suffered a concrete and particularized injury as to the EPA's misclassification. In fact, Robinson does the opposite—he alleges that he and "over 300 million

plaintiffs" have been similarly injured. [Id. at 11-12]. Merely being a driver and consumer in the United States, along with hundreds of millions of other individuals, does not qualify one as a uniquely injured party. As the government points out, this "directly contravenes the rule that 'a plaintiff cannot establish standing by asserting an abstract general interest common to all members of the public.'" [Dkt. 10 at 9 (quoting Carney v. Adams, 141 S. Ct. 493, 499 (2020))]. Indeed, the Court in Hollingsworth noted that a party claiming standing must be able to show a direct injury and "not merely that he suffers in some indefinite way in common with people generally." Hollingsworth, 570 U.S. at 706 (citation omitted).

Further, Robinson's presumable status as a taxpayer does not, on its own, entitle him to challenge the EPA's actions. Generally, individuals lack standing when their only interest in the matter is as a taxpayer, and Robinson is not challenging a legislative action under the taxing and spending clause. Frothingham v. Mellon, 262 U.S. 447, 485-86 (1923). See also Flast v. Cohen, 392 U.S. 83, 105-06 (1968) (stating that federal taxpayers have standing "when [they] alleg[e] that congressional action under the taxing and spending clause is in derogation of those constitutional provisions which operate to restrict the exercise of the taxing and spending power"). Consequently, Robinson fails to establish an injury in fact as to this claim as well.

In sum, Robinson fails to demonstrate standing for all of his claims: Throughout the Complaint he makes assumptions and generalized, conclusory allegations. Despite taking all inferences in favor of the Plaintiff and accepting all facts alleged as true, the Court finds that Robinson fails to identify actual evidence for the majority of his claims and instead makes unsupported speculations. "If the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to dismissal." Rodriguez-Reyes v. Molina-Rodriguez, 711 F.3d 49, 53 (quoting SEC v.

Tambone, 597 F.3d 436, 442 (1st Cir. 2010)).  Asserting subject-matter jurisdiction over Robinson's claims is not justified; therefore, they must be dismissed.  Because Robinson does not have standing, there is no need for the Court to address Defendants' 12(b)(6) claims.

## IV.     CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss [Dkt. 9] is **GRANTED**, and Plaintiff's Motion for Summary Judgment [Dkt. 14] is **DISMISSED** as moot.

**SO ORDERED.**

Dated: November 30, 2023                    /s/ Angel Kelley
                                                                                     Hon. Angel Kelley
                                                                                     United States District Judge